UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MARJORIE E. WARFIELD, )<br>)<br>Defendant. )<br>) | Civil Action No.<br>06-40149-FDS |

MEMORANDUM AND ORDER
ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This is an action to recover an erroneously issued tax refund, brought pursuant to 26 U.S.C. § 7405(b). In 2001, defendant Marjorie Warfield and her husband, John Warfield, filed a joint income tax return for the year 2000. They claimed a refund in the amount of $20,340, which was used to offset a separate liability of John's. In 2003, Marjorie and John then each filed additional income tax returns for the year 2000, this time each claiming a status of "married filing separately." Marjorie's return showed an overpayment of $26,110, which was then issued to her in a refund check. It is undisputed that the refund was erroneously issued. For a short time, Marjorie made installment payments to pay back the erroneously issued refund. After those payments stopped, the United States brought this action to recover the refund.

The United States has now moved for summary judgment. The only dispute is whether Marjorie has already paid back the erroneously issued refund by overpayments made on her tax returns between 2004 and 2016. For the reasons stated below, plaintiff's motion for summary judgment will be granted.

I.   **Background**

   A.   **Factual Background**

The following facts are either undisputed or taken in the light most favorable to the non-moving party.

On October 4, 2001, defendant Marjorie Warfield and her husband, John Warfield, filed a joint income tax return for the year 2000. (Warfield Dep. at 29-30; Shepardson Decl. ¶ 2).[1] They reported no liability and sought a refund in the amount of $20,340 based on their withholding. (Shepardson Decl. ¶ 3). That refund was used to offset a separate liability of John Warfield—specifically, a civil penalty assessed under 26 U.S.C. § 6672 for the tax period ending December 31, 1999. (*Id.*).

In June 2003, Marjorie and John each filed individual tax returns, each claiming the status of "married filing separately," also for the tax year 2000. (*Id.* ¶ 4; Warfield Dep. at 29-30). Marjorie's second tax return claimed an overpayment in the amount of $26,110 and sought a refund, which was paid to her by a check dated August 8, 2003. (Shepardson Decl. ¶ 5; Warfield Dep. at 31). Marjorie received that check, signed it, and deposited it into the account of the attorneys who represented her at the time. (Warfield Dep. at 31-32). The check cleared the Federal Reserve Bank on August 27, 2003. (Shepardson Decl. ¶ 5).

Marjorie was not entitled to that refund, and the check was issued to her by mistake. (Shepardson Decl. ¶ 6). After noticing the mistake, an Internal Revenue Service ("IRS") center in Andover, Massachusetts, attempted to collect the erroneously issued refund. (*Id.*). Marjorie did not dispute that she had received the funds. She returned approximately $5,040 by periodic installment payments of $420. (*Id.*). She then entered into an installment agreement with the

---

[1] The Warfields had received an extension of time to file their tax return for the year 2000 until October 15, 2001. (Shepardson Decl. ¶ 2).

IRS to pay back the remaining balance. (*Id.*). On July 18, 2005, she also agreed, by executing a Form 907, to extend the time period to August 1, 2006, during which the United States could bring an erroneous refund action. (Pl. Ex. 3). Marjorie ceased making installment payments in December 2005. (*Id.*).

Marjorie filed a petition for bankruptcy in 2007. The bankruptcy proceedings continued through 2015. (*Id.*). For the years 2006 through 2014, she filed tax returns with overpayments totaling $66,804, with the apparent intent that those funds would be used to pay back the outstanding balance. (*Id.*, Def. Exs. 2-10). According to her, she could not communicate that intention to the IRS because of communication limitations imposed as a result of the ongoing bankruptcy proceedings. (Def. SMF ¶ 7).

### B. Procedural Background

The United States filed this action on August 1, 2006, seeking return of the amounts owed. On July 9, 2009, the action was dismissed without prejudice pending the completion and termination of the bankruptcy proceedings. Following the conclusion of those proceedings, the United States moved to reopen this action on January 12, 2016. That motion was granted, and this action was reopened on January 20, 2016. The United States has now moved for summary judgment in its favor.

## II. Legal Standard

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a).  A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party."  *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted).  In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party.  *See O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir. 1993).  When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quotations omitted).  The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence."  *Id.* at 256–57.

**III.**     **Analysis**

    **A.**     **Statute of Limitations**

The United States has the authority to bring a civil action to recover "[a]ny portion of a tax imposed by [Title 26] which has been erroneously refunded," plus interest.  26 U.S.C. § 7405(b)-(c); *United States v. Wurts,* 303 U.S. 414, 416 (1938).  It must file an erroneous refund action within two years after the erroneous refund was made.  26 U.S.C. § 6532(b).  A refund is "made" on the date that "the check cleared the Federal Reserve and payment was authorized by the Treasury."  *United States v. Commonwealth Energy Sys. & Subsidy Cos.*, 235 F.3d 11, 14 (1st Cir. 2000).

The refund check issued to Marjorie Warfield cleared the Federal Reserve Bank on August 27, 2003.  Under § 6532(b), the limitations period would have expired on August 27, 2005.  However, on July 18, 2005, the parties executed a Form 907, extending the limitations period until August 1, 2006.  As noted, this action was filed that day.

4

Under § 6532, parties may agree by writing to extend the two-year limitations period in refund actions brought by *taxpayers*. *See* 26 U.S.C. § 6532(a)(2). In contrast, the only statutory exception to the two-year limitations period for actions brought by *the United States* to recover erroneous refunds is for actions involving refunds induced by "fraud or misrepresentation of a material fact." 26 U.S.C. § 6532(b). For refunds that were so induced, the limitations period is extended to five years. *Id.*

Nonetheless, § 6532(b) does not preclude agreements extending the limitations period for actions brought by the United States to collect erroneously issued refunds. For example, in *United States v. National Steel Corp.*, 75 F.3d 1146 (7th Cir. 1996), the Seventh Circuit held that parties may agree to extend the limitations period in such actions, as the statute of limitations is an affirmative defense that can be waived by defendants, and no statute precludes such a waiver. *Id.* at 1148-49. Here, defendant has neither raised the statute of limitations as an affirmative defense nor otherwise objected to this action on timeliness grounds.[2] Thus, this action was timely brought.

### B. Recovery of the Refund

The United States has the burden of proving both that an erroneous refund was made and the amount of that refund. *United States v. Reagan*, 651 F. Supp. 387, 388 (D. Mass. 1987). It has met that burden here.

First, it is clear that the refund was issued erroneously. It is undisputed that defendant filed an individual tax return for the year 2000 after she and her husband had already filed a joint

---

[2] In any event, this action falls within the longer limitations period for refunds induced by fraud or misrepresentation. Section 6532(b) provides that suits to recover erroneous refunds "may be brought at any time within 5 years from the making of the refund if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact." 26 U.S.C. § 6532(b). Defendant filed her second tax return for the year 2000, in which she claimed an overpayment, knowing that she and her husband had already filed a joint return for the year 2000 in which an overpayment was credited to John's civil penalty assessment.

tax return for that same year.  (Warfield Dep. at 29-30).  Tax returns for any given tax year are to be filed on or before April 15 of the following tax year unless an extension has been granted.  26 U.S.C. §§ 6072, 6081.  Defendant and her husband received an extension of time to file their 2000 tax return until October 15, 2001.  They then filed a joint tax return for the tax year 2000 on October 4, 2001.  Nearly two years later, defendant filed another tax return for the year 2000, this time filing separately, in which she claimed an overpayment.  However, "[f]or any taxable year with respect to which a joint return has been filed, separate returns shall not be made by the spouses after the time for filing the return of either has expired."  26 C.F.R. §1.6013-1.  Because defendant's second, separate tax return was improper, the refund was issued in error.

Second, the United States has established the amount of the refund.  It is undisputed that a refund check in the amount of $26,110 was issued to defendant, received and signed by her, and deposited by her into the account of her attorneys.  (Warfield Dep. at 31-32).

The only dispute is whether defendant already paid back the erroneous refund. According to the defendant, between the years 2006 and 2014, she made overpayments in her tax returns totaling $66,804, and she intended that those funds would be used to pay back the outstanding balance from the erroneously issued refund.  (Def. SMF ¶ 7; Def. Exs. 2-10).  At oral argument, the government stated that the overpayments were credited towards other deficiencies from past years.  According to plaintiff, those other deficiencies were related to her husband's business.

"When a taxpayer makes a voluntary payment without indicating the liability to which the payment is to be applied, ordinarily the IRS may apply the payment to whichever liability it chooses."  *Sotir v. United States*, 978 F.2d 29, 30 (1st Cir. 1992).  Defendant did not indicate the liability as to which she intended the overpayments to be credited.  She contends that she was

6

precluded from doing so due to the ongoing bankruptcy proceedings, but there is no evidence in the record to support that assertion.  In any event, the fact that defendant intended to pay back this liability but ended up paying back another instead does not change the fact that the United States is entitled to recover the erroneously issued refund.   Taking into account the $5,040 paid in installment payments between 2003 and 2005, defendant owes the United States $21,070.

Furthermore, the United States is entitled to recover interest on the amount of the erroneous refund from the date that the refund was made.  Section 6602 of the Internal Revenue Code provides that

> [a]ny portion of an internal revenue tax (or any interest, assessable penalty, additional amount, or addition to tax) which has been erroneously refunded, and which is recoverable by suit pursuant to section 7405, shall bear interest at the underpayment rate established under section 6621 from the date of the payment of the refund.

26 U.S.C. § 6602.  An assessment of interest under § 6602 is mandatory.  *See United States v. Putzel*, 2008 WL 2775878, at *8 (D. N.H. June 30, 2008).  Because the refund was made on August 27, 2003, interest shall accrue from that date.

### IV. Conclusion

For the foregoing reasons, the motion of the United States for summary judgment is GRANTED.  Based on the undisputed evidence, defendant Marjorie Warfield owes the United States $21,070, plus interest in accordance with 26 U.S.C. § 6602, accruing from August 27, 2003.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  April 5, 2017                                          United States District Judge